UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LISSETTE MONTALVO <br><br> Plaintiff <br><br> v. <br><br> BANK OF AMERICA CORPORATION BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, W.A. MARTY LACOUTURE, INDIVIDUALLY AND IN HIS CAPACITY AS SUBSTITUTE TRUSTEE <br><br> Defendants | CIVIL ACTION NO. 5:10-cv-360-XR |

# PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES LISSETTE MONTALVO the Plaintiff in the above-styled and numbered cause, and files this her Plaintiff's Original Complaint which is intended as an amendment of the Plaintiff's Original Petition, Application for Temporary Restraining Order, Request for Injunctive Relief, Jury Demand, and Request for Disclosure filed in the District Court of Bexar County, Texas. As grounds for complaint in this Court, the Plaintiff shows as follows:

**1.0.   INTRODUCTION.**

1.1.   The Plaintiff seeks damages and injunctive relief to remedy the injury that he suffered when wrongfully terminated as a probation officer for the Bexar County Community Supervision and Corrections Department.  The Plaintiff seeks relief under Federal Civil Rights Act, the Federal and State Declaratory Judgment Statutes, and the Texas Constitution.

**2.0.   JURISDICTION AND VENUE.**

2.1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.

2.2.   Venue is proper in this district pursuant to 24 U.S.C. §1391.

**3.0.   THE PARTIES.**

3.1.   **LISSETTE MONTALVO ("the Plaintiff").** The Plaintiff is an individual residing in Bexar County, Texas.

3.2.   **BANK OF AMERICA CORPORATION ("BoA").**  Bank of America is a National Banking Association incorporated in the State of Delaware and doing business in the state of Texas and has entered an appearance in this case.

3.3.   **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP.  ("BAC").**   BAC is a Texas Limited Partnership and has entered its appearance in this case.

**4.0.   THE FACTS.**

4.1.   In the fall of 2006, the Plaintiff became the proud owner of a home in San Antonio, Texas which is legally described as:

> CB 4449C BLK 71 LOT 18 " THE MEADOWS OF BRIDGEWOOD SUBD UT-7", according to the map or plat thereof recorded in Volume 12326, Pages 1163 of the Deed and Plat Records of Bexar County, Texas, with address 11334 Oro Canyon, San Antonio, Texas 78254.

This Plaintiff's real property and residence will hereinafter be referred to as the "the Property" or "the Plaintiff's Homestead".  The Property is the Plaintiff's Homestead.

4.2.   In connection with the purchase of the Property, in July 25, 2006 the Plaintiff executed a Promissory Note for $184,568.00 made payable to "Countrywide KB Home Loans, A Countrywide Mortgage Ventures, LLC Series" ("the Note").  The Notes is secured by a Deed of Trust, recorded at Volume 12326, Page 1163 of the Bexar County Deed Records ("the Deed of Trust")  The transaction evidenced by the Note and the Deed of Trust will hereinafter be referred to as "the Loan".

4.3.   In the summer of 2009, the Plaintiff, a single-mother residing in San Antonio, Texas sought information from BAC regarding the Loan.  The Plaintiff was having trouble making her loan payments because of the illness of her son. The Plaintiff contacted BAC for the purposes of inquiring what services BAC offered to persons who were having trouble making their mortgage payments.  The Plaintiff, while suffering a temporary setback because of the illness of her child, at all times during her dealings with BAC, had family resources available to cure any defaults,

as she had the absolute right to do under the Deed of Trust.

  4.4. When the Plaintiff inquired to BAC about the options available to her, BAC informed the Plaintiff that not only could BAC give her the information she needed to cure any current defaults in her existing loan, which BAC was apparently servicing on behalf of "Countrywide KB Home Loans, A Countrywide Mortgage Ventures, LLC Series", but BAC could provide other services relating to the Plaintiff's eligibility to participate in the Making Homes Affordable Program which was a part of the Troubled Asset Relief Program ("TARP").  The Plaintiff has since learned that when BoA accepted $25 Billion dollars from the United States Government related to its purchase of Countrywide, BoA, entered into a Commitment to Purchase Financial Instruments and Servicer Participation Agreement for the Home Affordable Modification Program sponsored by the Federal National Mortgage Association which is called "HAMP".

  4.5. On October 5, 2009 BAC represented to the Plaintiff's agents that the Plaintiff would be eligible to participate in a trial loan modification offered by BoA under HAMP.  BAC told the Plaintiff that instead of making up her delinquent payments as she had the right to do under the Deed of Trust, she should use their services and participate in one of the many programs available to borrowers under TARP and HAMP.  BAC represented to the Plaintiff that she should make three consecutive monthly payments of $1,091.00.  In turn, BAC represented, that such

payments would and could postpone any pending foreclosure. BAC represented to the Plaintiff that it would forward a written agreement placing the Plaintiff on a permanent loan modification upon verification of financial statements, which BAC would compile and send to the appropriate agency for processing. The events in October of 2009 are just the first in a series of events where BAC knowingly induced the Plaintiff to breach, and/or forego her rights under, the Note and Deed of Trust, which have continued through the filing of this Complaint.

    4.6.   On October 6, 2009 (one day after the agreement was made) the Plaintiff submitted a payment to BAC in the amount she was told by BAC. On October 21, 2009, Mr. Kevin Tamplin, acting on the Plaintiff's behalf, contacted BAC to confirm that The Plaintiff's required payment was received. Felix Bellamy, a collections manager for BAC, represented to the Plaintiff that the Plaintiff had defaulted on the "first trial period payment" by submitting the payment late and by submitting an insufficient amount of $816.00. Mr. Bellamy also stated that as a result of her failure to perform, the Plaintiff would no longer qualify for modification under HAMP. BAC told the Plaintiff that the Plaintiff's only option was to make a payment in the amount of One thousand six hundred dollars ($1,600.00) and apply for a traditional modification. Of course, under the Deed of Trust, that was not the Plaintiff's only option, and BAC's representation that the Plaintiff should make a payment less than the monthly amount called for in the Note was relied on to the

Plaintiff's detriment.

    4.7.    On October 27, 2009, the Plaintiff's agents once again, contacted BoA. After several hours on the telephone with different representatives, Jennifer (BOA ID# 7948) confirmed that a verbal trial payment plan was in fact offered by BoA representative, Camilla Garcia, on October 5, 2009. Jennifer also confirmed that the Plaintiff's payment of $1,091.00 was received by BoA in accordance with the Agreement. Finally, Jennifer stated that she would issue an electronic message to the BAC collections department in an effort to postpone the pending sheriff's sale. On October 29, 2009, Jordan (BOA ID#4905) confirmed that an electronic message regarding the postponement of the pending foreclosure sale was forwarded to BoA's foreclosure attorneys. Again, the Plaintiff relied on what BAC and BoA told her, and did nothing further to forestall the foreclosure.

    4.8.    Notwithstanding the above, on November 3, 2009, BAC purchased the Plaintiff's Home at a sheriff's sale held on the Bexar County Courthouse steps. The only attempt to contact the Plaintiff prior to the acceleration of the Note in the fall of 2009 was contact wherein BAC assured the Plaintiff that she should not make the Note payments in the amount set out in the Note, and that there would be no foreclosure. On November 8, 2009 the Plaintiff received a form letter from BoA telling her that they "...received your correspondence requesting our assistance because of the hardship you are facing..." but that despite BAC's representations,

BoA stated that "...the workout assistance you have requested is not an option". On November 20, 2009, BAC instituted eviction proceedings against the Plaintiff in Justice Court in Bexar County, Texas. On November 3, 2009 the Substitute Trustee executed a Substitute Trustee's Deed conveying the Plaintiff's Home to BAC.

4.9.   Finding her home foreclosed upon, the Plaintiff hired an attorney to represent her. On November 19, 2009, the Plaintiff's attorney wrote to BAC demanding that the First Foreclosure be set aside. After receipt of the letter, BAC agreed to set aside the First Foreclosure and on February 25, 2010 BAC filed a Rescission of Substitute Trustee's Sale, Cancellation of Substitute Trustee's Deed, and reconveyance Special Warranty Deed. The Rescission Deed provided that the Trustee's Deed was cancelled and that BAC agreed to "...rescind the acceleration of the indebtedness, reinstate the Note and Deed of Trust existing immediately prior to such foreclosure and conveyance, and return the parties to the status quo existing thereunder..."

4.10.   After the First Foreclosure, the Plaintiff once again sought the services of BAC to attempt to obtain relief under HAMP from the note holder. The Plaintiff entered into a "Negotiation Agreement" and BAC told the Plaintiff that they would help her obtain assistance and obtain review under HAMP and sent her instructions on how to fill out the government forms that BAC represented to her were necessary to qualify for one of the available government programs. BAC agreed to prepare and

present to a "Designated Agent" the appropriate information which would allow the Plaintiff to obtain benefits under the appropriate government program. BAC represented that the services it provided would include advice in what manner she should make her monthly payments in order to qualify for assistance under HAMP or other available government programs. BAC advised the Plaintiff of the necessary steps to take to qualify for assistance under HAMP, which included much more than just loan modification. The Plaintiff understood that BAC would receive compensation for the services rendered to her by charging fees to her lender.

4.11. When the Plaintiff began her communications with BAC, she was instructed not the Plaintiff make any other payments on the Note, until BAC finished processing her paperwork. When the Plaintiff offered to cure any delinquency in her mortgage, during the pendency of the Defendant's preparation of the documents, but her offer was refused. The Plaintiff was informed that the best avenue for her to follow in order to qualify for the benefits of the various programs offered by the government, she should stay in default under the Note. BAC, at the same time it was instructing the Plaintiff not to cure the delinquencies in the Note if she wanted to avail herself of the services offered by BAC, stated in the "Negotiation Agreement" that any scheduled foreclosure proceedings would not be abated. Yet in the very same document BAC told the Plaintiff that "...[d]uring the loss mitigation program eligibility review process we will not start foreclosure proceedings or conduct a

foreclosure sale if foreclosure proceedings have started...Prior to proceeding to foreclosure, your loan servicer must re-examine and re-evaluate your financial condition and confirm that none of FHA's other loss mitigation options could assist you."

      4.12.   Since February of 2010, the Plaintiff has attempted, with assistance of counsel this time, to determine her eligibility in HAMP or other programs for which BAC has represented that it would determine the Plaintiff's eligibility. During the time that the Plaintiff has sought assistance from BAC, the Plaintiff has been informed, *inter alia*, that she could not get assistance because "...the workout assistance you seek is not an option..." (November 2, 2009); that no information could be given without proper authorization (December 23, 2009); that "...we will not be able to present you with a response withing the time frame that we originally quoted you" (March 4, 2010); that "..we are still in need of additional documentation to complete your client's loan modification review..."(October 4, 2010); and that BAC had reviewed the document "...and we cannot find a hardship letter stating why the delinquency came about..."(October 8, 2010).  To date, the Plaintiff has not been informed that she does not qualify under HAMP.  The most recent request by BAC regarding the documentation necessary to qualify for HAMP was at the end of November 2010.

4.13.   Despite representing to the Plaintiff that no foreclosure would be held during the loss mitigation eligibility review, and despite by its own admission continuing such a review from February of 2010 through November of 2010, BAC again accelerated the Note and posted the Home for foreclosure in April of 2010. The Plaintiff filed this case in state court to restrain the foreclosure, and no foreclosure activity has occurred since that time.  The Plaintiff anticipates, however that the BAC intends to institute foreclosure, and seeks equitable relief from this Court to restrain any such foreclosure.

4.14.   The Plaintiff is the single parent of an eight year old son.  The Property is, and has been, the one and only home for her family.  The Plaintiff has struggled to provide an appropriate home for her son, and has invested much time and effort into making sure that his son's situation was secure.  This is why the Plaintiff acquired the services of BAC to assist her.  Since learning that she had lost her home by foreclosure, and then placed on another foreclosure sale, the Plaintiff has suffered both mental and physical pain and anguish. The Plaintiff has lost sleep, has suffered from increased blood pressure, has experienced digestive disorders, all directly attributable to the actions of the Defendants. The mental distress caused by the actions of the Defendant has debilitated the Plaintiff to the extent that it has interfered with her ability to earn a living.

**5.0.   FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

5.1.   When first contacted by BAC in October of 2009, the Plaintiff sought information from BAC regarding her rights under the Deed of Trust. Instead of advising the Plaintiff of the Plaintiff's absolute right to reinstatement both before and after foreclosure, as provided by paragraph 10 of the Deed of Trust, BAC told the Plaintiff that what she needed to do be in compliance with the Note and avoid acceleration and foreclosure was to make three payments of $1,091.00. The Plaintiff made those payments, but was foreclosed upon anyway. BAC excused the Plaintiff's non-compliance with the terms of the Note and the Deed of Trust by instructing the Plaintiffs to make payments in the amount that it did. The representations of the Defendants relating to the forebearance of foreclosure continued until the end of November 2010.

5.2.   The Defendants have breached the terms of the Note and Deeds of Trust by declaring a default in the payment when no default occurred, and by failing to give adequate notice to allow the Plaintiff to exercise her right to cure any defaults prior to accelerating the balance due on the Note. BAC is estopped from insisting that the Plaintiff comply with the terms of the Note after it represented to the Plaintiff that she make the payments as instructed, and the Plaintiff relied on those instructions to her detriment.

5.3.   The Note states that BAC's ability to accelerate the terms of the Note are subject to the regulations issued by the Secretary of the Department of Housing and Urban Development.  Those regulations, found at 24 C.F.R. 201.50, require that BAC may only accelerate the Note if it had serviced the loan in a timely manner and with diligence, and only after BAC had taken all reasonable and prudent measures to induce the borrower to bring the loan account current.  Before taking action to accelerate the Note, BAC is required to contact the Plaintiff, either in a face-to-face meeting or by telephone, to discuss the reasons for the default and to seek its cure.  BAC breached the terms of the Note accelerating the terms of the Note without servicing the Loan with diligence, without using any prudent measures to induce the Plaintiff to bring the loan account current; and failing to discuss with the Plaintiff the reasons for the default.  In fact, the Plaintiff was directly instructed not to bring the Loan current, and was so instructed by BAC.  As a direct and proximate result of BAC's breach of the Note, the Plaintiff has suffered damages as set forth below.

5.4.   On or about October 5, 2009, the Plaintiff and BoA entered into an oral contract to modify the terms of the Note and the Deed of Trust.  BAC and the Plaintiff agreed that if the Plaintiff made three payments of $1,091.00 and submitted the appropriate paperwork, BAC would induce BoA to modify the Loan in accordance with the terms and conditions of such modifications under HAMP.  The Plaintiff fully performed her agreement, and the Defendant partially performed the agreement, but

breached the agreement by accelerating the Note and foreclosing on the Plaintiff's home. The Plaintiff therefore seeks damages from BoA for breach of the oral agreement to modify the Loan in accordance with HAMP.

5.5.   The Plaintiff seeks specific performance of the terms of the Note and Deed of Trust, and requests the equitable intervention of this Court to order that both the Note and Deed of Trusts be reinstated, and that BAC and BoA be ordered to continue to perform the terms of both the Note and Deed of Trust as agreed. The Plaintiff further prays that a mandatory injunction be issued against the Defendants to prohibit any further actions to foreclose on the Property. The Plaintiff also seeks to offset the principle amount due on the reinstated Note by the damages proximately caused by the Defendant's breaches and other wrongful conduct.

5.6.   As the proximate result of the Defendants' breaches of contract set out herein, the Plaintiff has suffered actual economic damages. The Plaintiff has lost the opportunity to modify the Loan under HAMP, which would have entitled her to capitalize all arrearages under the Note, all late fees would have been forgiven and the Plaintiff would have affordable monthly payment amounts going forward. The same damages are alleged for breach of the oral agreement to modify the Plaintiff's loan. The failure of BAC to comply with the terms of the Note have damages the Plaintiff because she has incurred foreclosure related costs which she would not have otherwise incurred, including attorneys fees to get the First Foreclosure set

aside, and attorneys fees to restrain the second foreclosure. The Plaintiff has been informed by BAC that in order to "reinstate" the loan which BAC breached without cause, the Plaintiff has incurred approximately $2,600.00 in fees she would have not incurred but for BAC's breach. The Plaintiff would have avoided having a foreclosure reported on her credit record, which will preclude her from buying another home, as well as making it much more expensive to purchase another home if she is ever able to do so. The reported foreclosure will also result in more expensive automobile insurance for the Plaintiff as those rates will increase with the reporting of a foreclosure on the Plaintiff's credit record.

5.7. The Plaintiff seeks an award of her reasonable and necessary attorney's fees necessitated by the Defendants' breach of contract.

## 6.0. SECOND CAUSE OF ACTION: VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT.

6.1. The Plaintiff sought to acquire and did acquire services from BAC. The Plaintiff did not seek to acquire a loan of money from BAC, and did not expect BAC to renegotiate the terms of the Loan. Instead, the Plaintiff sought to acquire the services of BAC to determine the Plaintiff's eligibility to participate in HAMP or other programs offered by the government pursuant to TARP. The Plaintiff sought to acquire the services of BAC because of BAC's professed special expertise and knowledge about how the Plaintiff could qualify for one of the available programs offered by the government. BAC agreed, in exchange for fees paid to them by BoA,

to help the Plaintiff to prepare and present to a "Designated Agent" the appropriate information which would allow the Plaintiff to receive the most assistance she could from the appropriate government programs available under TARP, including but not limited to, HAMP.  BAC agreed on the Plaintiff's behalf, compile documents which BAC represented to the Plaintiff to be necessary to qualify for assistance under HAMP, advise the Plaintiff on what payments on the Note the Plaintiff should and/or should not make in order to qualify for HAMP, or one of other programs available through the government.  The Plaintiff is therefore a Consumer under the Texas Deceptive Trade Practices - Consumer Protection Act, Tex. Bus. & Com. Code §17.41, *et seq.* ("the DTPA").  All conditions precedent to the filing of this suit, and any ground of recovery alleged herein, have either been met or are excused under the DTPA.

6.2.    In connection with services rendered to the Plaintiff, BAC violated the DTPA in the following respects:

6.2.1. Violating § 17.46(b)(2) by causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of the services which BAC and BoA provide on behalf of the various clients represented by BAC and BoA;

6.2.2. Violating § 17.46(b)(2) causing confusion or misunderstanding as to BAC and BoA's affiliation, connection, or association with, or

certification by, another;

6.2.3. Violating § 17.46(b)(5)and (7) by:

a. representing that the services offered by the Plaintiff have characteristics, uses, and/or benefits, of helping the Plaintiff to qualify for government programs available to persons in her position, when in fact, the services had no such benefit;

b. representing that if the Plaintiff would default on the Note by making three payments in the amount of $1,091.00 that the Plaintiff would qualify for assistance under one of the applicable government programs available, including, but not limited to HAMP;

c. representing that services which BAC provides would have the benefit of allowing the Plaintiff to qualify for assistance under one of the applicable government programs available, including, but not limited to HAMP, when in truth and fact the agreement had no such benefit; and,

e. representing that services which BAC provides would delay the foreclosure on the Plaintiff's home when in fact the services had no such benefit.

6.2.4. Violating § 17.46(b)(23) by failing to disclose material facts to the Plaintiff to induce the Plaintiff to enter into an agreement to make payments not set forth in the Note, and such failure to disclose the information was intended to induce the Plaintiff to enter into a transaction which she would not have entered if such information had been disclosed.

6.2.5. Violating §17.50(a)(3) of the DTPA by engaging in an unconscionable course of conduct against the Plaintiff.

6.3.    The Defendant's violations of the DTPA were committed intentionally and knowingly.  The Plaintiff seeks an award of her economic damages as well as damages for the mental distress he has suffered as a proximate cause of the Defendant's conduct and threats to evict her and her eight year old son from the Plaintiff's home.  The Plaintiff has incurred damages by having a foreclosure reported on her credit record, which will preclude her from buying another home, as well as making it much more expensive to purchase another home if she is ever able to do so.  The reported foreclosure will also result in more expensive automobile insurance for the Plaintiff as those rates will increase with the reporting of a foreclosure on the Plaintiff's credit record.  The Plaintiff seeks the recovery of her mental pain as described above, pursuant to the DTPA.

6.4.    Pursuant to the terms of the DTPA, since the actions of the Plaintiff were committed knowingly and intentionally, the Plaintiff is entitled to an award of additional damages up to three (3) times the amount of the economic and actual damages sustained.  The Plaintiff therefore requests the court to award her additional damages against the Defendants.  The Plaintiff seeks all other relief he may be entitled to under the DTPA, including the equitable remedies or rescission, restitution, specific performance, and/or injunctive relief.

**7.0.   THIRD CAUSE OF ACTION: UNREASONABLE COLLECTION EFFORTS.**

7.1.   The actions of the Defendants to induce the Plaintiff into continuing her breach of the Note and Deed of Trust in order to induce the Plaintiff to use the services of the Defendant to obtain assistance under the appropriate government programs constitutes an unreasonable collection effort under the Common Law of the State of Texas.  The actions of the Defendants were taken intentionally and with the conscious disregard of the damage its actions would do the Plaintiff and her eight year old child.  The actions were done intentionally and done with full knowledge that the actions would inflict mental anguish upon the Plaintiff.

7.2.   As a direct and proximate result of the Defendants unreasonable collection efforts, the Plaintiff has suffered economic damages and mental pain and anguish.

**8.0.   JURY DEMAND.**

8.1.   The Plaintiff requests that this case be decided by a jury as allowed by the Federal Rules of Civil Procedure.

**9.0.   PRAYER.**

9.1.   WHEREFORE, PREMISES CONSIDERED, the Plaintiff in the above-styled and numbered cause requests that the Defendants be cited to appear and answer herein, that upon the final hearing of this cause the Plaintiff be awarded her damages, costs, attorney's fees, and statutory penalties, and interest, and that the

Plaintiff be granted such other and further relief to which she may be justly entitled.

        Respectfully submitted,

LAW OFFICES OF JOSEPH D. MACOM
JOSEPH D. MACOM
Suite 1350, Riverview Towers
111 Soledad
San Antonio, TX  78205
Telephone (210) 227-5885
Telecopier (210) 227-5935
State Bar No. 24004787

LAW OFFICES OF PETER J. STANTON
Suite 1350, Riverview Towers
111 Soledad
San Antonio, TX  78205
Telephone (210) 472-0500
Telecopier (210) 472-0515

By: *PETER J. STANTON*
    PETER J. STANTON
    State Bar No. 19054500
    ATTORNEYS FOR THE PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2011, the foregoing document was filed with the Clerk of the Court via CM/ECF system which will send notification of such filing as appropriate to:

C. Charles Townsend
Elizabeth Mazzarella
AKERMAN SENTERFITT, LLP
Plaza of the Americas, Ste. S1900
600 North Pearl Street
Dallas, Texas 75201

Christopher H. Pochyla
BARRETT, DAFFIN, FRAPPIER,
TURNER & ENGEL, LLP
115000 Surveyor Boulevard, Ste. 100
Addison, Texas 75001

*PETER J. STANTON*
PETER J. STANTON