UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LISSETTE MONTALVO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| BANK OF AMERICA CORPORATION, | § | SA-10-CV-0360 XR |
| BAC HOME LOANS SERVICING, LP | § | |
| f/k/a Countrywide Home Loans | § | |
| Servicing, LP, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING MOTION TO STRIKE EVIDENCE

This order addresses the defendants' motion to strike plaintiff Lissette Montalvo's summary judgment evidence.[1] Defendants Bank of America Corporation and BAC Home Loans Servicing ask the court to strike two affidavits. Montalvo completed the first affidavit. The affidavit includes an attachment to which the defendants also object. One of Montalvo's damages experts, Gregory Rubiola, completed the second affidavit.

**Montalvo's affidavit**. The defendants complained that the assertions in Montalvo's affidavit are markedly different than her deposition testimony. They asserted that, "In her own affidavit, Montalvo offer[ed] testimony that is flatly

---

[1]Docket entry # 62.

contradicted by her own deposition testimony and refer[red] to information to which she claimed no knowledge in her deposition."[2]  The defendants asked the court to strike the affidavit to prevent Montalvo from "on one hand stat[ing] she never met with Defendants in person and on the other hand later stat[ing] she did meet with Defendants in person in order to create a fact question."[3]

A plaintiff may not defeat a motion for summary judgment by creating an affidavit that impeaches, without explanation, sworn deposition testimony.[4]  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."[5]

As part of her breach of contract claim, Montalvo alleged that prior to foreclosing on her home, the defendants failed to meet with her, or discuss with her, the reasons for

---

[2] Docket entry # 62, p. 1.

[3] *Id.*, p. 5.

[4] *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) ("[A] nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."); *S.W.S. Erectors v. Infax*, 72 F.3d 489, 495 (5th Cir. 1996) (""[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

[5] *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

her default or failed to give her an opportunity to cure her default.[6] The defendants complained that although Montalvo attested that she met with a bank representative after the foreclosure, she never disclosed the alleged face-to-face meeting during her deposition and flatly denied such a meeting occurred. The defendants over-stated the character of Montalvo's testimony.

When questioned about her communications with the defendants' representatives, Montalvo's testimony was often vague and non-responsive. To many questions, Montalvo responded that she did not recall or she did not know. She referred to notes she had not brought to the deposition. About her efforts to refinance her home, Montalvo testified that a defendants' representative told her that someone would contact her, but that no one ever contacted her.[7] She stated that she sought answers to her questions about curing her default and refinancing her home for two years, but no one has contacted her.[8] Although not a model deponent, Montalvo did not deny meeting with a defendants' representative after the default.

Montalvo's affidavit supplemented her testimony by providing more detail and additional facts not provided in the deposition. The difference in the information in the

---

[6] Docket entry # 38, p. 12.

[7] Docket entry # 47, ex. C, pp. 104-06.

[8] *Id.*, p. 126.

affidavit and the information from the deposition likely resulted from the nature of the defendants' examination and their failure to ask Montalvo whether she ever met face-to-face with a bank representative about her default or about refinancing her home. Faced with the defendants' summary judgment motion, Montalvo recognized the need to provide more detail than she provided in her deposition and attested to additional facts. The affidavit supplements, not contradicts, Montalvo's deposition testimony. "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."[9]

**The attachment to Montalvo's affidavit**. Montalvo attached a document titled "Negotiation Agreement" to her affidavit. The defendants maintained the document is fraudulent because the third page contradicts the first and second pages. The defendants complained, "It defies logic that in the same document Defendants would preserve the right to conduct a foreclosure sale and then two pages later state they will not conduct a foreclosure sale."[10] The defendants maintained Montalvo added the third page to prove the defendants misled her about foreclosing on her home. Based on this argument, the defendants asked the court to strike the attachment and that portion of

---

[9]*S.W.S. Erectors v. Infax*, 72 F.3d 489, 496 (5th Cir. 1996).

[10]Docket entry # 62, p. 6.

Montalvo's affidavit referring to the negotiation agreement.

The defendants presented nothing proving the document attached to the affidavit is fraudulent. That the third page contradicts the first and second pages is as consistent with the creation of a fraudulent document as it is with Montalvo's argument that the defendants misled her by giving her conflicting instructions about refinancing her loan. Unless the defendants prove the document is fraudulent, Montalvo may rely on the document to prove her claims.

**Rubiola's affidavit**. BAC Home Loans Servicing services Montalvo's defaulted loan. Montalvo alleged that BAC Home Loans Servicing violated the Texas Deceptive Trade Practices Act by confusing her and misleading her about government programs for refinancing her home.[11] Montalvo alleged that BAC Home Loans Servicing failed to disclose certain facts to induce her to enter an agreement that she would not have otherwise entered. Montalvo relied on Rubiola's affidavit to support this claim.

Rubiola attested that the services Montalvo complained about which "would allow a borrower to qualify for participation in a government program, are not services usually provided in the furnishing of a Texas residential mortgage loan."[12] Rubiola further attested that, "[A]dvising a customer in what manner [to] make monthly

---

[11]Docket entry # 38, pp. 15-16.

[12]Docket entry # 59, ex. 2.

payments in order to qualify for assistance under…available government programs, is not a service usually incidental to a completed residential loan."[13]

The defendants asked the court to strike Rubiola's affidavit because it addresses an irrelevant issue. Because BAC Home Loans Servicing serviced Montalvo's loan and Montalvo sought a loan modification, the defendants maintain the relevant issue is whether the services Montalvo complained about are incidental to modifying an existing loan. The defendants argued that the affidavit should be struck because Rubiola is not qualified to testify about services incidental to servicing a loan, Rubiola's testimony is unreliable, and Rubiola's opinion is irrelevant.

To the extent the defendants complained about the reliability of Rubiola's testimony, reliability was addressed in the court's order denying the defendants' motion to strike Rubiola's expert testimony. As to whether Rubiola is qualified, Rubiola is qualified to attest to services incidental to obtaining a mortgage. Rubiola testified that mortgage brokers like himself do not determine borrower eligibility for participating in government loan modification programs.[14] He stated that when borrowers ask about loan modification through government programs, he refers borrowers to their loan

---

[13]*Id.*

[14]Docket entry # 66, ex. A, pp. 71-72.

servicers.[15]  He explained that people who assist borrowers with loan modification have knowledge different from residential mortgage brokers.[16]  Rubiola's testimony shows he is qualified to attest to the opinions in his affidavit because, as a mortgage broker, Rubiola knows who provides residential loans and who provides loan modifications.  In addition, the opinions in the affidavit are relevant because Montalvo alleged that BAC Home Loans Servicing represented that it could assist her in obtaining a loan modification through a government program and misled her about loan payments.  Montalvo may rely on Rubiola's affidavit.

    **Conclusion**.  For the reasons discussed in this order, I DENY the defendants' motion to strike Montalvo's summary-judgment evidence (docket entry # 62).

    **SIGNED** on December 19, 2011.

*[signature]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[15] *Id.*

[16] *Id.*, p. 73.