# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LISETTE MONTALVO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-10-CV-360-XR |
| | § | |
| BANK OF AMERICA CORPORATION | § | |
| and BAC HOME LOANS SERVICING LP, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

On this day the Court considered Defendants' Supplemental Motion for Summary Judgment (Doc. No. 94) and the parties' briefs in support and in opposition thereof. For the following reasons, the Court GRANTS the motion.

## I.

### A. Factual Background

On July 25, 2006, Plaintiff Lisette Montalvo ("Plaintiff")[1] borrowed $184,568 in connection with the purchase of property located at 11334 Oro Canyon, San Antonio, Texas 78254. Plaintiff executed a promissory note made payable to "Countrywide KB Home Loans, A Countrywide Mortgage Ventures, LLC Series." The note was secured by a deed of trust that was recorded in the Bexar County Deed Records. In 2009, both the note and the deed of trust were

---

[1] In her petition and her amended complaint, Plaintiff's name is spelled "Lissette" Montalvo. In the notice of removal, however, her name is spelled "Lisette" Montalvo.

1

assigned to Defendant BAC Home Loans Servicing, LP, which subsequently became a wholly owned subsidiary of Defendant Bank of America (collectively "Defendants").[2]

In the summer of 2009, Plaintiff began having trouble making her loan payments. On July 6, 2009, Defendants sent a letter to Plaintiff stating that her loan was "in serious default" because the May and June payments had not been made. Plaintiff contacted Defendants to inquire about services Defendants offered to persons who were having trouble making their mortgage payments. Plaintiff asserts that Defendants informed her that they could help her with her "current difficulties" and that they would also help her do what was necessary to apply for government loan relief programs, including the Home Affordable Modification Program ("HAMP").

On October 5, 2009, Defendants told Plaintiff that she would probably be eligible to participate in a trial loan modification offered by them and that they would help Plaintiff do what was necessary to qualify. Although Plaintiff told Defendants that her house was up for foreclosure in November and that she was able to make up the past unpaid payments if she should, Defendants allegedly told her "not to do so, because [she] could qualify for a government loan modification if [she] did what they told [her] to do and not catch up [her] payments."[3] Plaintiff asserts that Defendants told her that, instead of making her regular payments and making up her past payments, she should make three consecutive monthly payments of $1,091 and that, if she did so, the foreclosure sale scheduled for November 3, 2009 would not be held.[4] Plaintiff submitted a payment of $1,091 to Defendants the next day.

---

[2] *See* Doc. No. 47-1, Ex. A-1; Doc. No. 90 at 1. For the purpose of resolving Defendants' Supplemental Motion for Summary Judgment, it is not necessary to distinguish between the specific conduct of BAC and Bank of America. Plaintiff refers to both entities indiscriminately throughout her filings and the distinction does not impact the Court's analysis or ultimate holding.

[3] *See* Doc. No. 59-1 ¶ 4.

[4] *See* Doc. No. 59-1 ¶ 5. Plaintiff's full monthly payment would have been $1,290.53. *See* Doc. No. 47, Ex. C-3.

On October 27, 2009, Plaintiff contacted Defendants and a representative confirmed that a "verbal trial payment plan" was in place and that her payment of $1,091 "was received in accordance with the Agreement."[5] Plaintiff asserts that Defendants assured her that nothing further was needed to save her home from foreclosure and that the foreclosure sale would not take place on November 3, 2009. Plaintiff asserts that if this had not been true, she could have paid the arrearage with money that her family had previously told her that they would lend her.

Notwithstanding Defendants' alleged representations, on November 3, 2009, Defendants sold the home at a sheriff's sale held on the Bexar County Courthouse steps.[6]

On November 20, 2009, Defendants instituted eviction proceedings against her but the proceedings were subsequently dismissed and Plaintiff remained in her home. On February 25, 2010, Defendants filed a Rescission of Substitute Trustee's Sale, Cancellation of Substitute Trustee's Deed, and Reconveyance Special Warranty Deed.[7]

After the foreclosure sale was rescinded, Plaintiff again attempted to work with Defendants to attempt to qualify for a loan modification program. Plaintiff entered into a Negotiation Agreement with Defendants and Defendants offered to help her prepare necessary information. In her affidavit, Plaintiff asserts that "[w]hen [she] began [her] communications with BOA, [she] was instructed not [to] make any other payments on the Note until BOA finish [sic] processing [her] paperwork."[8] Plaintiff alleges that she offered to cure any delinquency in her mortgage "during the pendency of the [sic] BOA's preparation of the documents, but [her] offer was refused."[9] Plaintiff asserts that she was "informed that the best avenue for [her] to

---

[5] Doc. No. 59-1 ¶ 7.
[6] Plaintiff had made a total of two monthly payments of $1,091 prior to the November 3, 2009 foreclosure sale. *See* Doc. No. 59-1 ¶ 6. Plaintiff does not dispute that she has not made any further payments since that time.
[7] Doc. No. 47-1, Ex. C-14.
[8] Doc. No. 59-1 ¶ 13.
[9] Doc. No. 59-1 ¶ 13.

follow in order to qualify for the benefits of the various programs offered by the government, was for [her] to stay in default under the Note."[10]

However, despite representing to Plaintiff that no foreclosure would be held during the loss mitigation eligibility review, and despite allegedly continuing such a review from February of 2010 through November of 2010, Defendants again accelerated the note and scheduled a foreclosure sale for April 6, 2010.[11] Plaintiff consequently filed a lawsuit in state court to enjoin the foreclosure sale.

## B. Procedural Background

Plaintiff filed her original petition in the 131st Judicial District Court of Bexar County, Texas on April 5, 2010 seeking to enjoin a second foreclosure sale of her property. Defendants removed the action to this Court on May 7, 2010, based on diversity.

The Court granted Plaintiff leave to file an amended complaint on May 3, 2011.[12] The amended complaint, which remains the live pleading,[13] asserts causes of action for breach of contract, violation of the Texas Deceptive Trade Practices Act ("DTPA"), and unreasonable collection efforts.[14]

Defendants filed a motion for summary judgment on June 24, 2011. Defendants argued that they were entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff's attempt to enforce an oral agreement was barred by the statute of frauds, because

---

[10] Doc. No. 59-1 ¶ 13. Plaintiff ultimately learned that she was denied a loan modification because she was more than twelve months delinquent. *See* Doc. No. 59-1 ¶ 15 & Ex. D.
[11] Doc. No. 59-1 ¶ 16; Doc. No. 47-1, Ex. B-2.
[12] Doc. No. 37.
[13] The Magistrate Judge denied Plaintiff's motion for leave to file a second amended complaint on December 13, 2011, finding that the motion for leave to amend had been filed after the applicable scheduling order deadline and that Plaintiff had not shown good cause to modify the scheduling order. *See* Doc. No. 79. The Magistrate Judge had authority to resolve the motion pursuant to 28 U.S.C. § 636(b) and Plaintiff did not object to the denial of the motion.
[14] *See* Am. Compl., Doc. No. 38.

4

Defendants did not breach the deed of trust, and because Plaintiff was seeking enforcement of a regulation that was inapplicable to her loan. Defendants also argued that Plaintiff's DTPA claim fails as a matter of law because she is not a "consumer" under the DTPA and that Plaintiff's unreasonable collection efforts claim fails because Plaintiff's testimony demonstrated that she could not satisfy the elements of the claim. The Court referred Defendants' motion for summary judgment to Magistrate Judge Nowak on November 10, 2011,[15] and the Magistrate Judge recommended that the motion be granted in its entirety.[16]

The Court accepted the Magistrate Judge's recommendation on March 30, 2012.[17] The Court found that Plaintiff was not a consumer under the DTPA because she had not sought to obtain services by purchase or lease. The Court found that to the extent Defendants offered services regarding modification of the loan, "the services were offered only to determine whether Plaintiff would be eligible to modify the loan it owned, meaning that the services were incidental to a loan modification."[18] The Court also agreed with the Magistrate Judge that summary judgment was proper on Plaintiff's unreasonable collection efforts claim because Plaintiff had failed to show a course of harassment that was willful, wanton, malicious and intended to inflict mental anguish.

With regard to Plaintiff's breach of contract claim, the Court recognized that the claim contains a number of facets and the Court considered them as follows.

Paragraph 5.3 of the amended complaint alleges that Defendants breached the terms of the note by violating regulations issued by the Department of Housing and Urban Development ("HUD"). The Magistrate Judge recommended that summary judgment be granted because the

---

[15] Doc. No. 78.
[16] Doc. No. 88.
[17] Doc. No. 93.
[18] Doc. No. 93 at 20-21.

5

amended complaint cites to inapplicable HUD regulations and because, even considering the correct regulations, the claim that Defendants were required to have a face-to-face meeting could not survive summary judgment because an exception to the regulatory requirement applied. The Court accepted the Magistrate Judge's recommendation because Plaintiff had not filed objections and the Court found the recommendation to be neither clearly erroneous nor contrary to law.

Paragraph 5.4 of the amended complaint alleges that Plaintiff and Defendants entered into an oral contract to modify the terms of the note and deed of trust on October 5, 2009, in which they agreed that if Plaintiff "made three payments of $1,091.00 and submitted the appropriate paperwork, BAC would induce BoA to modify the Loan in accordance with the terms and conditions of such modifications under HAMP."[19] The Magistrate Judge found that the alleged modification agreement was governed by the statute of frauds and that, consequently, the agreement could not be enforced because it was not in writing. The Court accepted the Magistrate Judge's recommendation to grant summary judgment on Plaintiff's claim related to breach and enforcement of an alleged oral agreement to modify the loan, noting that Plaintiff accedes that she may not attempt to enforce such an oral agreement.

Paragraphs 5.1 and 5.2 of the amended complaint allege that Defendants have breached the terms of the note and deed of trust by declaring a default in payment when no default occurred, that Defendants excused Plaintiff's non-compliance with the terms of the note and deed of trust by instructing Plaintiff to make certain payments, and that Defendants are estopped from insisting that Plaintiff comply with the terms of the note after they represented to Plaintiff that she should make the payments as instructed and Plaintiff relied on Defendants' instructions to her detriment. Paragraph 5.2 also alleges that Defendants breached the note and deed of trust

---

[19] Am. Compl. ¶ 5.4.

by failing to give adequate notice to allow Plaintiff to exercise her right to cure any defaults prior to accelerating the balance due on the note. The Court agreed with the Magistrate Judge that summary-judgment evidence established that Defendants provided adequate notice and that actual enforcement of an oral modification agreement was barred by the statute of frauds and therefore granted Defendants' motion for summary judgment on those arguments.

However, the Court distinguished between Plaintiff's argument regarding enforcement of an alleged oral modification agreement and her argument regarding estoppel. Specifically, the Court recognized that Plaintiff had asserted an estoppel argument in the nature of waiver or excuse, and that her argument was distinct from her attempt to enforce the oral agreement to modify the loan. The Court acknowledged that language in the Restatement[20] addressed Plaintiff's argument and the Court explained the implications of the Restatement's language as follows:

> [I]f a mortgagor changes her position and defaults in reliance on an oral modification agreement, which is unenforceable under the statute of frauds, such that reinstatement of the original terms of the loan would be unjust, the mortgagor's default may be excused and the mortgagee estopped from asserting its rights (such as acceleration and foreclosure) triggered by the default. Such a claim does not attempt to enforce the unenforceable oral agreement, but rather excuses the mortgagor's default under the existing, enforceable loan agreement.[21]

The Court recognized that "although Plaintiff was not induced to default, her argument is that she was induced into remaining in default and not exercising her right to cure the default by Defendant's representations and agreements."[22] Accordingly, the Court stated that "Plaintiff's

---

[20] Specifically, the Court looked at the Restatement (Second) of Contracts § 150, comment b, which provides in part that an "unenforceable modification may operate as a waiver. To the extent that the waiver is acted on before it is revoked, it excuses the other party from performance of his own duty and of conditions of the duty of the waiving party."

[21] Doc. No. 93 at 28. The Court expressly noted, however, that "Texas courts do not appear to have considered, much less adopted, § 150 of the Restatement." *Id.*

[22] Doc. No. 93 at 29-30.

7

claim turns on whether she was wrongfully induced by Defendants not to cure and, if so, whether that amounts to a waiver or estoppel of Defendants' right to foreclose."[23]

Because Defendants did not expressly move for summary judgment on whether they waived the default or are estopped from asserting the default as a basis for acceleration, the Court found that this portion of Plaintiff's breach of contract claim remained pending. The Court permitted Defendants to file an additional motion for summary judgment on this claim within twenty-one days and instructed Defendants that the motion "should address both the factual and legal basis for Plaintiff's claim, and should address both whether Defendants were in breach by accelerating and foreclosing in November 2009 (and any damages flowing therefrom) and whether Defendants were in breach by accelerating and giving notice of intended foreclosure in March 2010."[24] Defendants timely filed a supplemental motion for summary judgment, Plaintiff filed a response, and Defendants filed a reply.

## C. Defendants' Supplemental Motion for Summary Judgment

In their supplemental motion for summary judgment, Defendants argue that Plaintiff's remaining breach of contract claim fails as a matter of law for several reasons. With regard to the November 3, 2009 foreclosure sale, Defendants contend that Plaintiff's estoppel argument fails because Plaintiff's reliance on the representations was not reasonable as a matter of law, that her defense of excuse fails because there is no evidence that Defendants breached the contract or prevented her from performing, and that a claim of waiver cannot survive summary judgment because Plaintiff does not raise a waiver claim, but even if she did, the claim would fail because the record is devoid of any evidence that Defendants intended to waive Plaintiff's default and because the deed of trust expressly disclaims a waiver of any rights or remedies. With regard to

---

[23] Doc. No. 93 at 30.
[24] Doc. No. 93 at 31.

the April 6, 2010 scheduled foreclosure sale, Defendants argue that Plaintiff's breach of contract claim fails for essentially the same reasons. Defendants also argue that they are entitled to summary judgment on Plaintiff's breach of contract claim because the record is devoid of any evidence to support the element of damages and that they are entitled to summary judgment on Plaintiff's request for specific performance because there is no evidence that she is presently ready, willing and able to reinstate the debt.

In her response to Defendants' supplemental motion for summary judgment, Plaintiff limits her argument to the issue of promissory estoppel in connection with the November 3, 2009 foreclosure sale. Plaintiff asserts that she "simply requests the Court to deny BOA the right to defend its November 3rd foreclosure based on the Plaintiff's default, because BOA induced the Plaintiff not to take the very action that could have prevented the foreclosure."[25] Although Plaintiff concedes that the oral representations did not change her contractual monthly payment from $1,290.53 to $1,091, she argues that "when BOA told her to make a payment in a different amount, they cannot hold her in default for doing so."[26] Plaintiff contends that her reliance on Defendants' promise was not unreasonable as a matter of law because reliance is a fact issue for the jury and supports her contention by arguing that the loan agreement does not prohibit Defendants' promise and that the relative position of the parties weighs in favor of the reasonableness issue being evaluated by a jury. Plaintiff also alleges that she suffered damages as a result of the November 3, 2009 foreclosure sale, including damage to her credit reputation[27]

---

[25] Response ¶ 5.5.
[26] Response ¶ 6.2.
[27] Specifically, Plaintiff contends that as a direct result of the November 3, 2009 foreclosure sale, she failed to qualify for a loan at an interest rate of 4% and would have qualified for such a loan "but for the foreclosure on her record." Response ¶ 7.2. Plaintiff contends that the foreclosure therefore cost her over $100,000. As evidence of her damages, Plaintiff relies on the affidavit of an expert witness, Gregory Rubiola, which Plaintiff attached to her response to the supplemental motion for summary judgment. *See* Doc. No. 96-1. Defendants have moved to strike

and attorneys' fees incurred in defending the eviction proceedings and getting the foreclosure sale set aside.[28] Plaintiff also argues that she was relieved of her duty to make further monthly payments after the November foreclosure sale because the sale constituted a material breach of the note and deed of trust.

In reply, Defendants maintain that Plaintiff's reliance was unreasonable as a matter of law in this case because the subject matter of the alleged oral promise was addressed in the parties' loan agreement, because Plaintiff agreed that the loan agreement could not be contradicted by oral agreement, and because the "level of sophistication" argument is unpersuasive in light of the fact that Plaintiff works as a store manager for the largest pawn shop operator in the world and, as part of her job, she received specific training about "the lending laws of Texas" and trains employees about "how to make loans to individuals."[29]

## II.

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The court must draw reasonable inferences and construe evidence in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue

---

Mr. Rubiola's affidavit from the summary judgment record because they argue that his testimony is neither reliable nor relevant. *See* Doc. No. 100.
[28] As evidence of the attorneys' fees she incurred, Plaintiff attached to her response to the supplemental motion for summary judgment an affidavit from Joseph Macom, an attorney who worked on her behalf to get the foreclosure sale rescinded. *See* Doc. No. 96-2.
[29] Reply at 9.

of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## III.

### A. Breach of Contract

Plaintiff's only remaining claim is for breach of contract. She claims that Defendants breached the terms of the note and the deed of trust by declaring a default when no default occurred and by foreclosing on the property in November of 2009.

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.— Houston [1st Dist.] 1995, no writ). In this case, there is no dispute that the note and the deed of trust represent a valid contract. There is also no dispute that Plaintiff has not tendered performance. Plaintiff did not timely make her monthly payments in full as required by the note, she did not cure the default, and she has not been reinstated pursuant to the deed of trust. Ordinarily, Plaintiff's default would prevent her from maintaining a cause of action for breach of contract. *See Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) ("It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." (internal quotation marks omitted)). However, Plaintiff argues that Defendants are "estopped" from insisting that she comply with the terms of the note because they told her not to cure the default and that her property would not be foreclosed upon if she made three payments of $1,091. In essence, Plaintiff is asserting that Defendants affirmed her contractual breach.

11

"A party may affirm a contract that has been breached in one of two ways: (1) by evidencing a conscious intent to do so; or (2) by acting so as to induce the other party's detrimental reliance, thereby creating an estoppel situation." *Consolidated Engineering Co. Inc. v. S. Steel Co.*, 699 S.W.2d 188, 191 (Tex. 1985). The Texas Supreme Court's holding suggests that Defendants could have affirmed Plaintiff's breach through the doctrines of either waiver or estoppel. The Court will consider each theory in turn.

**1. Did Defendants' Conduct Prior to the November 3, 2009 Foreclosure Sale Affirm Plaintiff's Default?**

**a. Waiver**

Under Texas law, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). "[A]n obligee may waive the obligor's requirement for strict compliance with the terms of a contract if the obligee expressly or impliedly assents to the obligor's nonconforming conduct." *Addicks Services, Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 298 (5th Cir. 2010) (alteration in original) (quoting *Fairfield Fin. Group, Inc. v. Gawerc*, 814 S.W.2d 204, 209 (Tex. App.—Houston [1st Dist.] 1991, no writ). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). "Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed . . . the question becomes one of law." *Id.* at 156-57. The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to

relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).

Texas courts have distinguished between the doctrines of waiver and modification. As one Texas court of appeals explained, "waiver is a doctrine distinct from modification or rescission, as it is unilateral and does not 'require special tokens of reliability, such as a writing, consideration, reliance, judicial screening, or a heightened standard of proof.'" *Kim v. Ahn*, No. 01-11-00231-CV, 2012 WL 4857356, at *4 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, no pet.) (quoting RICHARD A. LORD, WILLISTON ON CONTRACTS § 39.16 (4th ed. 2007)). "While the statute of frauds may prevent an oral modification of a contract, 'any contractual right can be waived,' even if it's governed by the statute of frauds." *Id.* (quoting *R. Conrad Moore & Assocs. v. Lerma*, 946 S.W.2d 90, 93 (Tex. App.—El Paso 1997, writ denied)).

However, if a contract falls within the statute of frauds, a party generally "cannot enforce any subsequent oral *material* modification to the contract." *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (emphasis added) (citing *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967)). Texas courts have found that an unenforceable verbal modification does not operate as a waiver. *Kistler v. Latham*, 255 S.W. 983, 986 (Tex. Comm'n App. 1923) ("The verbal modification in the present instance . . . was not the waiver of a lien but was a modification of a contract . . . . This contract could not be modified by parol . . . ."); *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that there was no evidence of waiver where oral representations did not constitute a binding agreement and where the representations were not inconsistent with a contractual requirement that "[n]o modification . . . shall be binding unless in

13

writing"); *Triton Commercial Properties, Ltd. v. Norwest Bank Texas, N.A.*, 1 S.W.3d 814, 817 & n.1 (Tex. App.—Corpus Christi 1999, pet. denied) ("In the present case, it would not be practical to attempt to distinguish the concept of 'waiver' from that of 'modification.' [The] alleged waiver of the deadline for making payment by orally agreeing to late payment is indistinguishable from an oral agreement to modify the time for payment. Accordingly, the statute of frauds applies as it would in the case of any other oral modification.").

Defendants argue that Plaintiff does not explicitly argue waiver, and the Court agrees. In her amended complaint and her response to Defendants' supplemental motion for summary judgment, Plaintiff never mentions "waive" or "waiver." However, Plaintiff's remaining claim is premised on the argument that Defendants relinquished their contractual right to foreclose because they specifically told Plaintiff that they would not do so. Simply because Plaintiff has not used the label of "waiver" does not mean that the Court should overlook the merits of her claim. *See Gearlds v. Entergy Services, Inc.*, -- F.3d ---, 2013 WL 610543, at *4 (5th Cir. Feb. 19, 2013) ("Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used.").

Nonetheless, any implied claim of waiver fails because the claim would solely rely on evidence of unenforceable oral representations allegedly made by Defendants.[30] Defendants' oral representations could be construed as evidence of a new oral contract, an agreement to modify the existing loan agreement, or a unilateral promise not to foreclose. In the Court's order granting Defendants' motion for summary judgment, the Court determined that the representations are unenforceable if construed as a new oral contract or as an oral agreement to modify the existing loan agreement because both constructions would be governed by the statute

---

[30] Although the only evidence of the alleged oral representations come from assertions in Plaintiff's affidavit, Defendants do not appear to dispute the veracity of her assertions.

of frauds and the statute of frauds is not satisfied in this case because there is no writing evidencing any agreement and because no exception to the statute applies. *See Montalvo v. Bank of Am. Corp.*, 864 F.Supp.2d 567, 582-83 (W.D. Tex. 2012). The Court now determines that the representations are also unenforceable if they are construed as a unilateral promise not to foreclose.

In Texas, the statute of frauds for loan agreements provides: "A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COMM. CODE § 26.02(b). The statute defines a loan agreement as "one or more promises, promissory notes, [or] agreements . . . pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." TEX. BUS. & COMM. CODE § 26.02(a)(2). If a loan agreement falls within section 26.02 then, generally, an agreement to modify the loan agreement must also comply with section 26.02. *See, e.g.*, *Deuley v. Chase Home Fin., LLC*, No. H-05-04253, 2006 WL 1155230, at *2 (S.D. Tex. April 26, 2006).

In this case, construing Defendants' oral representations as a unilateral promise cannot practically be distinguished from construing the representations as an oral agreement to modify the contract. As one Texas court of appeals has explained, "section 26.02 [of the Texas Business and Commerce Code] not only precludes an oral loan agreement in which the amount involved exceeds $50,000, but limits any determination of the rights and obligations of the parties solely to the written loan agreement." *Krudop v. Bridge City State Bank*, No. 09-05-111-CV, 2006 WL

3627078, at *4 (Tex. App.—Beaumont Dec. 14, 2006, pet. denied). Here, Defendants' oral promise purports to create a new remedy by which Plaintiff can avoid foreclosure after default. While Plaintiff argues that Defendants' oral promise did not contradict the note because the promise did not change her monthly payment from $1,290.53 to $1,091.00, Plaintiff does not, and cannot, argue that the oral promise did not purport to modify the circumstances under which foreclosure would be appropriate pursuant to the note and deed of trust. Thus, because an oral promise would be indistinguishable from an oral modification agreement in this case, any unilateral promise, like a modification agreement, would be unenforceable under the statute of frauds; to hold otherwise would allow Plaintiff to circumvent the statute of frauds by essentially enforcing an unenforceable modification agreement.

The Court's holding that Defendants' oral promise not to foreclose is unenforceable because it does not satisfy the statue of frauds is supported by case law from both Texas state courts of appeals and federal district courts interpreting Texas law. *See, e.g.*, *Horne v. Bank of Am., N.A.*, No. 4:12-CV-622-A, 2013 WL 765312 (N.D. Tex. Feb. 28, 2013) (holding that an oral representation that a foreclosure sale had been stopped was not enforceable unless it was made in writing); *Ellen v. F.H. Partners, LLC*, No. 03-09-00310-CV, 2010 WL 4909973, at *5 (Tex. App.—Austin Dec. 1, 2010, no pet.) (where there was an alleged promise not to declare the loan agreement in default or foreclose on property, holding that "regardless of whether [the statute of frauds] applies to the 'promise' . . . the [plaintiffs] cannot enforce that 'promise' because it is an oral modification of a loan agreement that was subject to the statute of frauds); *Krudop*, 2006 WL 3627078, at *4 (holding that an oral promise not to foreclose "would fall under the provisions of section 26.02(b), and be included under the definition of 'loan

16

agreement' in section 26.02(a)(2)"). Therefore, because the only evidence of waiver in this case consists of unenforceable oral representations, the Court finds that Defendants did not waive their right to foreclose under the loan agreement.

Plaintiff has not provided any authority suggesting that Defendants' oral statements may operate as a waiver in this case nor is the Court aware of any such authority. To the contrary, a recent unpublished opinion from the Fifth Circuit, *Milton v. U.S. Bank Nat. Ass'n*, No. 12-40742, 2013 WL 264561 (5th Cir. Jan. 18, 2013), in which the Fifth Circuit considered a factual scenario very similar to the case at bar, lends further support to this Court's holding. In *Milton*, the plaintiff defaulted on his payment obligation and the loan servicer sent him a Notice of Default, Notice of Acceleration of Loan Maturity, and Notice of Foreclosure Sale. The plaintiff alleged that the loan servicer had "orally represented that his home would not be foreclosed upon" while a HAMP application was pending and that, subsequently, a representative "orally confirmed that the Property would not be foreclosed upon while his application was pending." *Id.* at *1. Despite the oral representations, the property was sold at a foreclosure sale. The plaintiff filed a wrongful foreclosure action in state court against the mortgagee and the mortgage servicer and asserted, among other causes of action, a claim for breach of contract. In the district court, in connection with his breach of contract claim, the plaintiff argued that the defendants breached the deed of trust and that the defendants "misled him which prevented him from reinstating the note by bringing it current or paying the note in its entirety prior to foreclosure." *See Milton v. U.S. Bank Nat. Ass'n*, No. 4:10-CV-538, 2012 WL 1969935, at *2 (E.D. Tex. May 31, 2012). The plaintiff further argued that the defendants' "representations that foreclosure would not occur until after his modification application was reviewed created confusion" and

that, because the defendants represented that foreclosure would not occur until after the application was reviewed, the defendants' representations "resulted in the withdrawal of the notice of foreclosure." *Id.* The district court rejected the plaintiff's arguments, holding that:

> The crux of the Plaintiff's argument is that the Defendants agreed to delay foreclosure. An agreement to delay foreclosure falls under § 26.02(b). As such, any agreement to delay foreclosure must be in writing in order to be enforceable. Since there was no written agreement to delay foreclosure, the court finds that the Plaintiff's breach of contract claim is barred by the statute of frauds.

*Id.* at *3. On appeal, the Fifth Circuit affirmed, stating: "The district court held, and we agree, that because there was no written agreement to delay foreclosure, plaintiff's breach of contract claim is barred by the statute of frauds." *Milton*, 2013 WL 264561, at *2. Although the Fifth Circuit did not explicitly mention waiver, its decision to unequivocally affirm the district court's holding suggests the unenforceable oral representations did not constitute a withdrawal of the notice of foreclosure or otherwise vitiate the defendants' right to foreclose.

It is even clearer that Defendants' oral representations did not waive the right to foreclose in this case because language in the deed of trust expressly disclaims any intent to waive rights under the contract. The deed of trust provides that "[a]ny forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy."[31] Federal district courts in Texas have relied on similar language in reaching the conclusion that a lender did not waive its contractual right to foreclose. *See Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155 (N.D. Tex. Feb. 21, 2012) (holding that language in the deed of trust, which stated that "[a]ny forbearance [sic] by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy," and the HAMP trial plan made clear that forbearance from immediate foreclosure and loan modification

---

[31] Doc. No. 47-1 ¶ 11.

discussions, including any promises by the defendants not to foreclose, did not constitute a waiver of the defendants' rights); *Defranceschi v. Wells Fargo Bank, N.A.*, 837 F.Supp.2d 616, 624 (N.D. Tex. 2011) (holding that the defendants did not waive their right to accelerate and foreclose by telling the plaintiffs not to make payments on the note while they were awaiting approval of their loan-modification requests because the deed of trust provided that "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy" and because any oral instruction given to the plaintiffs would be unenforceable). A recent unpublished opinion from the Fifth Circuit corroborates the Court's holding on this issue as well. *See Thomas v. EMC Mortg. Corp.*, No. 12-10143, 2012 WL 5984943 (5th Cir. Nov. 30, 2012) (affirming the district court's holding that the defendant banks did not waive their right to act on the plaintiffs' breach by accepting payments following default because both the promissory note and the repayment plan contained "no-waiver" provisions and because the plaintiffs adduced no summary-judgment evidence that the banks had manifested an actual intent to relinquish their rights under the contract). Accordingly, the Court finds that Defendants did not waive their right to foreclose based on conduct that occurred prior to the November 3, 2009 foreclosure sale.

### b. Promissory Estoppel

In her amended complaint, Plaintiff contends that Defendants are estopped from insisting that she comply with the terms of the note because Defendants represented to Plaintiff that her house would not be foreclosed upon if she made three monthly payments of $1,091.

"When a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement." *In*

*re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005). "Promissory estoppel does not create liability where none otherwise exists, but 'prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them.'" *Id.* (quoting *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965)).

"The requisites of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).[32] "When promissory estoppel is raised to bar the application of the statute of frauds, there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds." *Id.* at 139. Thus, to prevent summary judgment on an otherwise valid statute of frauds defense, the nonmovant must produce some evidence of the following: "(1) the movant made an oral promise to sign a written agreement that satisfied the statute, and the nonmovant foreseeably relied on the promise to his detriment; or (2) the movant orally represented the statute of frauds had been satisfied, and the nonmovant relied to his detriment on the misrepresentation." *Id.* (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936-37 (Tex. 1972)).[33]

Here, the doctrine of promissory estoppel is unavailing to Plaintiff based on the competent summary judgment evidence in the record. As discussed above, Defendants' oral

---

[32] The elements of promissory estoppel have been stated somewhat differently by another Texas court of appeals, which also relied on authority from the Texas Supreme Court. As stated in *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546, 553 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.), "[p]romissory estoppel allows enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury." However, the distinction makes no difference to the Court's holding or analysis in this case.

[33] Some Texas courts of appeals have also clarified that, to avoid the statute of frauds, the alleged oral promise must be to sign an existing document. *See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that would satisfy the requirements of the statute of frauds.").

representations that it would delay foreclosure are unenforceable regardless of whether the statements are construed as a new contract, a modification of the existing contract, or as a unilateral promise. The promissory estoppel exception to the statute of frauds does not avail Plaintiff in this case because there is no evidence that Defendants promised to execute a writing that satisfied the statute of frauds, nor is there evidence that Defendants represented that the statute of frauds had been satisfied. This Court's holding is in accord with Texas courts of appeals and federal courts applying Texas law. *See, e.g.*, *Milton*, 2013 WL 264561, at *2 (holding that promissory estoppel was not established where the plaintiff failed to allege or introduce evidence that a loan servicer promised to reduce its alleged oral misrepresentations into writing); *Casey v. Fed. Home Loan Mortg. Ass'n*, No. H-11-3830, 2012 WL 1425138, at *7 (S.D. Tex. April 23, 2012) (where the plaintiffs had received verbal assurances that there would be no foreclosure, holding that the promissory estoppel exception to the statute of frauds did not apply because there was no allegation that there was an existing written agreement relating to the delay in foreclosure that the defendants promised to sign); *Ellen*, 2010 WL 4909973, at *6 (promissory estoppel could not be used to enforce a promise that would be otherwise unenforceable under the statute of frauds because there was no promise to sign an existing written agreement).[34]

In their briefs, both parties discuss the issue of whether Plaintiff's reliance on Defendants' statements was reasonable. The issue of reasonable reliance is moot in this case because Defendants' statements were unenforceable due to the statute of frauds and because the

---

[34] These courts addressed the promissory estoppel exception to the statute of frauds in the context of promissory estoppel being asserted as an independent cause of action rather than in the context of promissory estoppel being asserted to overcome a defendant's assertion that the statute of frauds bars a plaintiff's claim for breach of contract. However, the relevant analysis remains the same. *See Ford*, 44 S.W.3d at 140 (holding that when promissory estoppel is asserted as an independent cause of action, "[a]s when promissory estoppel is used as a defense, if the underlying oral promise is barred by the statute of frauds, the plaintiff must show that the promisor promised to sign a written document that would satisfy the statute of frauds.").

promissory estoppel exception to the statute of frauds does not apply. Nonetheless, even if reasonable reliance were a relevant inquiry, as a matter of Texas law Plaintiff's reliance on Defendants' oral representations was unreasonable.

"Courts have emphasized that 'estoppel requires a *reasonable* or *justified* reliance on the conduct or statement of the person sought to be estopped by the person seeking the benefits of the doctrine." *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (emphasis in original) (quoting *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 108 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)). Whether "reliance was reasonable is generally a question of fact and not a question of law." *Hall v. Harris Cnty. Water Control & Imp. Dist. No. 50*, 683 S.W.2d 863, 868 (Tex. App.—Houston [14th Dist.] 1984, no writ). However, "[w]hen the parties' written agreement addresses the substance of the oral statement and contains language precluding reliance on external representations, Texas courts find reliance on subsequent oral promises unreasonable." *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, No. 14-06-00986-CV, 2008 WL 1991738, at *2 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) (mem. op.).

Texas courts have explained that "[t]he contract itself is notice of binding duties, and when it requires that amendments be in writing, that is additional notice not to rely on oral representations." *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 908 (Tex. App.—Houston [1st Dist.] 1995, writ denied). "[A] party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party." *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858

(Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en banc) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). Therefore, under Texas law, "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Id*. This rule has been applied in the foreclosure context. *See Milton*, 2013 WL 264561, at *3 (citing *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that the plaintiff's "reliance on oral representations by customer service representatives that were contradicted by the terms of the loan agreement and the notice of foreclosure was not reasonable as a matter of law").

Here, Defendants argue that Plaintiff's reliance on oral representations was not reasonable as a matter of law in light of express language in the note, the deed of trust, and the Loan Agreement Notice. Plaintiff argues that her reliance was not unreasonable as a matter of law but is instead a fact question that should be evaluated by the jury because the "Loan Agreement" does not contain "a disclaimer of oral representation or reliance," but "at best" only prohibits Plaintiff "from asserting an oral agreement contrary to the terms of the Note."[35] Plaintiff also argues that the issue of whether reliance was justified should be evaluated by a jury because the question of justifiable reliance depends heavily on the relative sophistication of the parties, and Plaintiff alleges that she is a single mother with a twelfth grade education and has no financial experience while Bank of America is the largest bank in the United States.

Upon consideration of the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's reliance on the oral representations was unreasonable as a matter of law. Plaintiff does not dispute that the only remedy specified in the note and deed of trust for avoiding foreclosure after acceleration is reinstatement. By executing the Loan Agreement Notice,

---

[35] Response ¶ 6.2.

Plaintiff was given conspicuous notice that her rights and obligations would be determined solely from the written loan agreement and that the loan agreement may not be contradicted by subsequent oral statements.[36] Defendants' oral representations that they would delay foreclosure if Plaintiff made certain reduced payments controverted these written provisions: namely, the oral representations purported to create a new remedy for avoiding foreclosure after default and purported to modify the circumstances under which Defendants could foreclose. Accordingly, as a matter of Texas law, Plaintiff's reliance on Defendants' oral representations was not justified.

This Court's holding is supported by the Texas court of appeals' holding in a closely analogous case. In *Ellen v. F.H. Partners, L.L.C.*, 2010 WL 4909973, the plaintiffs had defaulted on their loan by failing to make payments as required by the loan agreement so they were sent notices of default, demand for payment, and intent to accelerate maturity. When the Ellens failed to timely cure their default, their note was accelerated and their property foreclosed upon. Shortly after the foreclosure, the Ellens filed a lawsuit and asserted a cause of action for promissory estoppel based on their allegation that a loan officer had promised not to declare the loan agreement in default or foreclose on the secured property to allow the Ellens time to refinance or sell the property. The court of appeals found that the promise was unenforceable due to the statute of frauds and went on to find that, regardless of whether the statute of frauds applied, the defendant was entitled to summary judgment because "[i]t was not reasonable or justifiable for the Ellens to rely on the oral 'promise' because the Loan Agreement addressed the substance of the oral statement—i.e., when and under what circumstances the holder of the note

---

[36] The Loan Agreement Notice states:
    **THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
Doc. No. 47-1, Ex. C-19 (emphasis in original).

can declare the note in default and foreclose on the secured property—and specifically prohibited oral modification of its terms." *Id.* at *4.

Plaintiff nonetheless argues that the relative status of the parties creates a fact issue as to whether Plaintiff's reliance was reasonable. Although Plaintiff is correct that the relative position of the parties should generally be taken into account when considering whether reliance on a representation was justified,[37] the argument does not change the Court's holding in this case for two reasons. First, as Defendants point out, Plaintiff is not a stranger to the finance industry. Rather, she is employed as a store manager of a large pawn shop operator and, as part of her job, she received specific training about "the lending laws of Texas" and she trains employees on "how to make loans to individuals."[38] Furthermore, even if Plaintiff had no experience with finance, she has cited no authority, and the Court is aware of no authority, suggesting that her lack of financial experience could overcome the strong presumption under Texas law that reliance on an oral statement is unreasonable as a matter of law if the statement is controverted by the plain language of a binding written contract. Accordingly, the Court finds that the doctrine of promissory estoppel is unavailing to Plaintiff in this case.

As a result of the foregoing analysis, the Court has determined that the competent summary judgment evidence establishes that Defendants did not waive their right to foreclose on the property on November 3, 2009 and that Defendants were not estopped from insisting that Plaintiff comply with the terms of the note and the deed of trust. Accordingly, the November 3, 2009 foreclosure sale was not a breach of the contract and did not excuse Plaintiff's non-performance.

---

[37] *See 1001 McKinney Ltd.*, 192 S.W.3d at 30 ("The question of justifiable reliance depends heavily on the relationship between the parties and their relative sophistication.").
[38] *See* Deposition of Lissette Montalvo, Doc. No. 96-3 at 14:2-15.

**2. Did Defendants' Conduct Subsequent to the November 3, 2009 Foreclosure Sale Affirm Plaintiff's Default?**

Plaintiff's breach of contract claim appears to be based solely on the November 3, 2009 foreclosure sale and on Defendants' conduct preceding that sale. Plaintiff does not assert, either in her amended complaint or in her response to Defendants' supplemental motion for summary judgment, that Defendants breached the contract by accelerating again and scheduling the April 6, 2010 foreclosure sale. To the contrary, in her response to the supplemental motion for summary judgment, Plaintiff explicitly alleges that Defendants "breached the Note and Deed of Trust by accelerating the Note and foreclosing under the Deed of Trust in November of 2009"[39] and all of her argument relates to the November 3, 2009 foreclosure sale. Because the Court has found that the November foreclosure sale did not constitute a breach of contract, Defendants are entitled to summary judgment on Plaintiff's remaining breach of contract claim.

However, even if the Court liberally construed Plaintiff's filings as alleging that Defendants' conduct subsequent to the November 3, 2009 foreclosure sale somehow affirmed Plaintiff's default and that the April 6, 2010 foreclosure proceedings therefore constituted a breach of contract, summary judgment on Plaintiff's breach of contract claim would still be proper for several reasons. One, Plaintiff has not produced any evidence of damages resulting from the April 6, 2010 scheduled foreclosure sale. Rather, the only evidence of damages that Plaintiff has produced concern damages that allegedly flowed from the November 3, 2009 foreclosure sale.[40] Furthermore, insofar as Plaintiff could be alleging waiver or estoppel based on Defendants' oral representations that no foreclosure would occur pending the loan modification

---

[39] Response ¶ 7.5.
[40] In her response to Defendants' supplemental motion for summary judgment, Plaintiff even asserts that she "does not claim further damages by the second acceleration and posting." *See* Response ¶ 7.5.

review that was allegedly pending from February 2010 through November 2010, Plaintiff's arguments fail for the same reasons as discussed above. Defendants' oral representations are unenforceable under the statute of frauds and are also controverted by the express language of the deed of trust and the Loan Agreement Notice. Additionally, any oral statements that were made after February 2, 2010, were also controverted by express language of the Negotiation Agreement, which provides:

> We each acknowledge and agree that if your Loan is delinquent currently, BAC Home Loans Servicing, LP will continue to report all delinquencies to the credit reporting agencies. In addition, BAC Home Loans Servicing, LP will continue with any and all collection and foreclosure action concerning your Loan, and such action will not be suspended or canceled under any circumstances unless and until BAC Home Loans Servicing, LP specifically agrees in writing to suspend or cancel such action, or unless your Loan is fully reinstated or paid off.[41]

The Negotiation Agreement also states that "[n]o negotiations or any other action undertaken by you and/or BAC Home Loans Servicing, LP pursuant to this Agreement shall constitute a waiver of any party's rights under the Loan Documents, except to the extent specifically stated in a written agreement . . . ."[42] This language establishes that Defendants' oral representations pending the loan modification review did not constitute a waiver of any of Defendants' rights under the contract, that the oral representations could not constitute an enforceable promise or agreement, and that, as a matter of law, Plaintiff's reliance on the oral representations was not reasonable. The Court recognizes that there is evidence that Plaintiff received a written notice along with the negotiation agreement that stated "[d]uring the loss mitigation program eligibility review process we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started."[43] However, the notice is not an embodiment of any of the

---

[41] Doc. No. 59-1, Ex. B.
[42] Doc. No. 59-1, Ex. B.
[43] Doc. No. 59-1, Ex. B.

alleged oral representations and, additionally, the notice does not satisfy the statue of frauds because it was not signed by Defendants. *See* TEX. BUS. & COMM. CODE § 26.02(b).

Accordingly, the Court finds that Defendants did not waive their right to schedule a foreclosure sale for April 6, 2010 and that Defendants were not estopped from insisting that Plaintiff comply with the terms of the note and the deed of trust from any conduct that transpired subsequent to the November 3, 2009 foreclosure sale.  As a result, the Court finds that Plaintiff's continued non-performance was not excused and that Defendants' act of scheduling a foreclosure sale of the property for April 6, 2010 did not constitute a breach of contract.

**IV.**

**Conclusion**

As a result of the foregoing analysis, the Court finds that Defendants are entitled to summary judgment on Plaintiff's remaining breach of contract claim. Defendants' Supplemental Motion for Summary Judgment (Doc. No. 94) is therefore GRANTED.

Defendants' motion to strike (Doc. No. 100) is dismissed as moot.

The Clerk is directed to enter judgment that Plaintiff take nothing on her claims. Defendants are awarded their costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of the judgment.

It is so ORDERED.

SIGNED this 7th day of March, 2013.


_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE